IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| JAIME HERRERA, | ) | |
| | ) | CASE NO. CV 02-358-S-MHW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| STATE OF IDAHO, DEPARTMENT OF | ) | |
| CORRECTION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>INTRODUCTION</u>

Plaintiff Jaime Herrera ("Herrera"), filed this action against the Defendant State of Idaho, Department of Correction ("the Department"), alleging gender discrimination, sexual harassment, and retaliation in violation of both Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act ("IHRA"), as well as various state law claims.  On June 22, 2004, the Department filed its first Motion for Summary Judgment (Docket No. 19).  On December 17, 2004, the Court entered a Memorandum Decision and Order (Docket No. 53), granting summary judgment in favor of the Department on Herrera's Title VII and IHRA claims of gender discrimination based on disparate treatment and hostile work environment, as well as Herrera's remaining state law claims.  The Court, however, reserved its judgment with respect to Herrera's

**Memorandum Decision and Order – Page 1**

claim that he was not hired for a custody staffing position in retaliation for filing a claim with the Equal Employment Opportunity Commission ("EEOC") and the Idaho Human Rights Commission ("IHRC").  In deciding to reserve its ruling, the Court found that the record had not been sufficiently developed on this particular issue.  Rather than simply granting or denying the Department's motion, the Court ordered the parties to submit supplemental briefs on the retaliation claim.

Currently pending before the Court is the Department's Second Motion for Summary Judgment (Docket No. 58), filed on August 1, 2005.  The Department asks the Court to decide whether Herrera has submitted sufficient evidence to raise a genuine issue of material fact with respect to his claim that he did not receive a promotion to a custody staffing position, not because he was not the best candidate for the position, but because he filed a complaint with the EEOC and the IHRC.  After all the briefing for the summary judgment motion had been submitted, The Department also filed a Motion to Strike Affidavit of Jamie [sic] Herrera in Response to Second Motion for Summary Judgment (Docket No. 62), filed on September 9, 2005.  Herrera submitted his second affidavit after the Department filed its Reply Brief.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.[1]  Because Herrera has not submitted specific and substantial evidence of

---

[1] *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (holding that "a district court can decide [summary judgment] without oral argument if the parties...ha[ve] had an adequate opportunity to provide the trial court with the evidence and a memorandum of law.")

**Memorandum Decision and Order – Page 2**

pretext to refute the Department's legitimate, non-discriminatory reasons, the Court will grant summary judgment in favor of the Department.  The Court will also grant the Department's Motion to Strike.

## I.
## Background

The parties are familiar with the facts.  Therefore, the Court will only render a brief synopsis of the facts relevant to the remaining retaliation claim.

Herrera began his work with the Department in 1986 and was eventually promoted to the position of Program Coordinator of Security in 1999.  As Program Coordinator of Security, Herrera reported directly to Lisa Cates, the Deputy Administrator of Prisons for the Department, and Bona Miller, the Administrator of Prisons.  During her tenure, Bona Miller expressed her desire that women be given a fair opportunity to compete within the Department.  Sometime in the year 2000, Herrera applied for the Deputy Warden position at the North Idaho Correctional Institute ("NICI").  He was denied the promotion and Teressa Baldridge, a woman, was selected.

After the Department refused to hire Herrera for the Deputy Warden position, Herrera filed a Charge of Discrimination with the EEOC on May 14, 2001, and the IHRC on May 22, 2001, naming his supervisor, Bona Miller, as one of the alleged perpetrators of the discriminatory acts against him.  Subsequent to filing his complaint, Herrera applied for a custody staffing position within the Department for which Ms. Miller allegedly served on the interview panel.  Herrera states that he objected to the presence of Miller on the interview panel, but the Department refused to dismiss her.  Herrera did not receive the promotion.  Instead,

**Memorandum Decision and Order – Page 3**

Steve Duell, a twenty-seven year veteran with the Department was promoted from Lieutenant to the custody staffing position with the new title of "Administrative Support Manager."

## II.
## Motion to Strike

As a preliminary matter, the Court will address the Department's Motion to Strike.  On September 6, 2005, Herrera filed an affidavit in response to Defendant's Second Motion for Summary Judgment.  Herrera did not attach the affidavit to any particular response paper and he filed the affidavit after all the briefing had been submitted.  Local Rule 7.1(c) requires the responding party to serve and file "with the response brief any affidavits, copies of all photographs, and documentary evidence on which the responding party intends to rely."  The Rule does not permit the responding party to submit additional affidavits after all the briefing has been submitted.  Herrera violated the dictate of Local Rule 7.1(c).  He had an opportunity to file any affidavits with his response papers, which he neglected to do.  Therefore, the Court will strike his second affidavit as untimely and in violation of Local Rule 7.1(c).

## III. Motion for Summary Judgment

### A. Standard of Review

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (1993).  A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case."

*Celotex Corp v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  It is not enough for the [non-moving] party to "rest on mere allegations of denials of his pleadings."  *Id.*  Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id.* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability."  *Id*. at 249-250. "The mere existence of a scintilla of evidence in support of the [defendant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [defendants]."  *Id.*

The Ninth Circuit has consistently applied the standard for granting summary judgment. *Musick v. Burke*, 913 F.2d 1390 (9th Cir. 1990); *Pelletier v. Federal Home Loan Bank*, 968 F.2d 865 (9th Cir. 1992); *Bieghler v. Kleppe*, 633 F.2d 531 (9th Cir. 1980).

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party.  To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law.  *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th. Cir. 1981).

**Memorandum Decision and Order – Page 5**

The Ninth Circuit has recently emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).

> In order to withstand a motion for summary judgment, the non-moving party (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

**B. Retaliation Claim**

Herrera claims that he did not receive the custody staffing position because Miller refused to promote Herrera in retaliation for naming in her in his charge of discrimination with the EEOC and the IHRC.  Under § 704 of the Civil Rights Act of 1964, it is unlawful "for an employer to discriminate against of his employees...because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, or assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." 42 U.S.C. § 2000e-3 (2000).

To make out a prima facie case of retaliation,  Herrera must establish that:  1) he engaged in a protected activity; 2) he suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment decision.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002), *citing Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987).  The burden shifting of *McDonnell Douglas* is said to apply to the legal

analysis of retaliation claims. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d at 1062-63, citing *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1264 (9th Cir. 1997).

Herrera filed a claim with the EEOC and IHRC in May of 2001. This is a protected activity, as was his filing of this lawsuit. Before filing his claim with the EEOC and the IHRC, Herrera applied for a custody staffing position with a selection process that occurred in May and June of that year. Herrera scored 100% on the qualifying test and was selected for an interview. On May 23, 2004, Herrera interviewed with the Department for the Administrative Management Support Manager position. Despite Herrera's protestations, Bona Miller allegedly participated on the interview panel, which interviewed Herrera. Herrera further alleges that Miller made the final decision as to which candidate should be hired and she allegedly convinced Dan Mahoney, a member of the interview panel for the custody staffing position, as well as the other panelists, that Herrera should not be promoted, in retaliation for naming in her in his charge of gender discrimination. Herrera was not hired for the position.

For purposes of this motion, the Department concedes that Herrera has established a *prima facie* case for retaliation. The requisite degree of proof necessary to establish a *prima facie* case for Title VII...on summary judgment is minimal and does not even need to rise to the level of a preponderance of evidence." *Wallace v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)(other citations omitted). Under *McDonnell Douglas*, once Herrera make out a *prima facie* case of retaliation, "the burden shifts to [the Department] to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Mannatt v. Bank of Am., N.A.,* 339 F.3d 792, 800 (9th Cir. 2003). Therefore, the Court must embark upon its analysis of Herrera's

retaliation claim by examining the Department's stated reasons for hiring Steve Duell, rather

than Herrera, for the custody staffing position.

The Department states, "Steve Duell was offered the custody staffing position because

his background, experience and training eclipsed not only all of the other applicants, but also Mr.

Herrera's." Mr. Duell was selected as the Administrative Support Manager in accordance with

the standardized scoring, rating, interview and selection process used by state agencies in filling

positions in the state classified system. In this instance, Dan Mahoney, who had extensive

experience in nearly all the security positions through the Department, was asked by Bona Miller

to implement a staffing model developed for the Department by a private consultant. As part of

his temporary administrative assignment, Mahoney developed the job description for the

Administrative Support Manager position. Miller also asked Mahoney to participate on the

panel responsible for interviewing the 6-8 selected candidates for the Administrative Support

Manger position. Miller states that she entrusted him with the ultimate responsibility of

recommending to her which candidate he believed would best fill the position.

Mr. Duell, as well as the other applicants, including Herrera, completed a Qualifications

Statement in order to qualify for the interview process. Herrera received a score of 100 based on

his written responses and Steve Duell received a score of 97. Barry Goold, Alan Lee, Kenneth

Paul, Johanna Smith and James Taylor also scored 97. Each of the above applicants made the

register for qualified candidates. Terri Tomisser, the Senior Human Resource Specialist for the

Idaho Department of Correction, testified that the register only serves as a method for

determining minimum qualifications of applicants for a given position and neither a candidates's

score or position on the register automatically entitles a candidate to the position. According to

**Memorandum Decision and Order – Page 8**

Tomisser, any of the candidates may be interviewed (or not) and any of the candidates may be offered the position regardless of their score on the qualifying exam.  Herrera, as well as the other previously named candidates receiving a score of 97, were asked to interview for the position.

Once a candidates is selected to be interviewed, a  panel ranks the candidates again based on their performance in the oral interview.

Before the interview, Mahoney provided each candidate a sample staffing analysis problem.  Each candidate was allotted a half hour to decipher the staffing pattern.  The panel discussed the problem with the candidates during the oral interviews.  Mahoney testified that out of all the candidates, Steve Duell was the most impressive.  Mahoney had served as Duell's supervisor for many years at various institutions and he regarded Duell as a reliable, effective employee with a good work ethic and record, good interpersonal skills and good computer skills.  Duell was one of the longest-serving lieutenants at the time (nearly fourteen years) and he had worked in all three of the Department institutions in Boise for a total of  twenty-seven years.  In addition, Duell was the only candidate to answer the hypothetical correctly.

Mahoney also regarded Herrera as a fine candidate.  However, Mahoney testified that he did not feel Herrera had the depth of security background and he did not answer the staffing problem as well as Mr. Duell.  Herrera had served one and half years as a lieutenant.  In sum, Mahoney states that he felt Duell's depth of experience, his responses to the staffing problem and his experience and training in staffing gave him the edge over the other candidates, including Herrera.  As his previous supervisor, Mahoney was familiar with Duell's work and did not believe he would require extensive supervision.

**Memorandum Decision and Order – Page 9**

Mahoney further stated that he does not recall the panel's decision process in detail. The records delineating the panel members and the scores for each interviewee have apparently been purged in accordance Department policy. However, Mahoney recollects that all the panel members agreed that Duell had the best oral interview and that he "aced" the hypothetical staffing question. Mahoney only recalls speaking to Miller once about the different candidates during the selection process. This occurred after the interview in the beginning of June, 2001 when he made his recommendation to Miller and provided her with the rationale for his recommendation. He informed her that Steve Duell was the most qualified candidate. Miller concurred with Mahoney's recommendation to hire Duell based on her knowledge of Duell's extensive experience and qualifications, the strength of his oral interview, and Mahoney's confidence in his abilities. These are all legitimate, non-discriminatory reasons. The Court finds that the Department has more than met its burden to articulate a legitimate, non-discriminatory reason for selecting Duell for the promotion over Herrera and the other six candidates.

Since the Department has offered legitimate reasons for selecting Duell for the promotion over Herrera, the burden shifts to Herrera to demonstrate that the reasons given by the Department are pretextual. A plaintiff may demonstrate that a defendant's legitimate reasons for an adverse employment action are pretextual in two ways, "by directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1068 (9th Cir. 2004), *citing Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981). "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Stegall,* 350 F.3d at 1068, *citing*

*Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (*quoting Davis v. Chevron, U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir. 1994)).  "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial."  *Id.*

In contrast, where direct evidence is unavailable and the plaintiff proffers only indirect circumstantial evidence that the employer's motives were different from its stated motives, then "specific" and "substantial" evidence of pretext is required to defeat summary judgment.  *Id.*

For example, in *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1068 (9th Cir. 2004), the Court found that Stegall offered a "myriad of circumstantial evidence" to show that Marthon's explanations for termination were pretextual.  Stegall was employed as a disc jockey by a radio station that was eventually purchased by Marathon.  Prior to the purchase, Stegall complained that she was subjected to gender discrimination and that she was paid less than her male counterparts.  She even "walked out" of her job and was lured back by being given a raise, which she claimed, angered the station manager.  After the sale of her station to Marathon, Stegall complained to the new management about what previously transpired with the hope that they would not allow such conduct to continue.  Soon after she complained, Marathon changed the format the station dramatically to a computerized music format.  Eventually, all the disc jockeys lost their jobs because of change in format, Stegall's was terminated only nine days after she made her complaints.  The other employees were "phased out" over time and Stegall was only one of two who were not given a job at one of the other five stations that Marathon owned in the area.  The other person who was not given a job was also a female who also made gender

discrimination complaints.  Marathon cited the station format change as providing the final impetus for terminating Stegall's employment.

Stegall brought suit, alleging that she was retaliated against for her complaints.  As a reason for her termination, Marathon offered the change-of-format explanation.  However, after the suit was filed, Marathon also stated that it had been dissatisfied with Stegall's "attitude" during the brief period that she worked for it.  It also became clear that the station manager wanted Stegall's employment terminated.  Stegall presented evidence that her relationship with the station manager deteriorated after her return from the two week walkout.  The station manager allegedly refused to speak in a civil manner to Stegall upon her return and during an argument, "he denigrated her based on her gender (calling her a "slut," "bitch," and "whore"). *Id.* at 1098.  According to Stegall, the change in ownership provided the manager with the perfect opportunity to secure Stegall's termination.  Stegall contends that the change in format provided the manager with the perfect excuse he needed to terminate her employment.

In addition to her own testimony concerning how the station manager allegedly mistreated her, Stegall submitted deposition testimony from other witnesses, who also observed the station manager's animosity towards Stegall, noting that the manager was angered by Stegall's leave of absence and called her a "spoiled brat."  Based on this evidence, as well as the timing of Stegall's termination, the Court concluded that Stegall had marshaled specific and substantial evidence of improper motives on the part of Marathon, and reversed the district court's decision granting summary judgment in favor of the defendant.

In contrast, Herrera fails to offer "specific" and "substantial" evidence indicating the Department's proffered reason for hiring Duell rather than Herrera is a mere pretext for

discrimination.  While Herrera purports to cite a litany of "facts" in support of his allegation that he was not hired for the custody staffing position, none these so-called facts amount to more than mere supposition and conjecture.

In arguing the he was not promoted because of a retaliatory motive, Herrera relies heavily on the contention that his former supervisor, Bona Miller, was a member of the interview panel[2] and supposedly directed the selection process for the Administrative Support Manager position.  Herrera maintains that Bona Miller made the final decision as to which candidate would be hired for the position and Dan Mahoney's role was strictly advisory and it was ultimately Miller's call. Herrera further offers as "fact" that: 1) Miller discussed the interviewees with Mahoney, 2) expressed her personal opinion about the interviewees, 3) discussed the applicants with the other panelists,  and 4) the other panelists "deferred to Ms. Miller's positions regarding Herrera."  Herrera also claims that Miller and Mahoney discussed Herrera after his interview and that Mahoney only recommended Miller hire Mr. Duell because Mahoney knew Miller would not consider Herrera.

However, Herrera offers scant evidence, direct or circumstantial, to suggest that Miller even spoke to Mahoney about Herrera, more or less, persuaded Mahoney not to recommend Herrera for the position.  In fact, these "facts" offered by Herrera contradict the affidavits of both Miller and Mahoney, who both testified that Mahoney was the driving force behind the decision to hire Duell and Miller only concurred with, but did not influence, his recommendation.

---

[2] Miller does not recall participating as a member of the interview panel.  She further states that, as a matter of course, she normally would not sit as a panel member for such a position.  However, Herrera testified in his deposition that he specifically recalls that Miller was member of the panel.  He further testified that he lodged a complaint objecting to her presence on the panel.  The Court, drawing all inferences in favor of the plaintiff, accepts Herrera's recollection.

**Memorandum Decision and Order – Page 13**

Mahoney stated he believed that the hiring recommendation for this position was delegated to him by Miller and that he never spoke to Miller about Herrera either before or after the interview process.

Miller's account of the events detailed in her affidavit closely mirrors Mahoney's. Miller stated that she asked Mahoney to recommend one candidate and provide her with the rationale for the recommendation. Miller does not recall speaking to Mahoney about *any* of the candidates, with the exception of Duell when Mahoney made his hiring recommendation. She recalls that Mahoney was the primary individual responsible for filling the Administrative Support Manager position and that she simply concurred with his recommendation.

Yet, despite Miller and Mahoney's assertions to the contrary, and without offering any evidence to contradict their statements, Herrera states that it is "inconceivable" that Miller would not have discussed the qualifying individuals with Mahoney since he reported to her, and it must be "assumed" that Mahoney considered Miller's comments and relied upon those opinions when assessing all of the candidates. Herrera then argues that assumptions about the "realities of human nature" dictate a conclusion that Miller was motivated by her desire to retaliate against Herrera, and "but for" this desire to retaliate against Herrera, she would have hired him for the custody staffing position rather than Steve Duell. Herrera offers no response to the fact that Duell "aced" the hypothetical staffing problem, had the best oral interview of the candidates, and had 14 years of experience as a lieutenant to Herrera's one and half.

Herrera attempts to discount Duell's qualifications by pointing to the fact that he received a score of 100 on the Qualification Statement and Duell only received a paltry 97 of 100. However, a score on a Qualification Statement has little bearing on the final hiring decision. As

**Memorandum Decision and Order – Page 14**

Ms. Tomisser testified, the qualifying examination only serves as a method for determining minimum qualifications of applicants for a given position and neither a candidates's score or place on the register entitles a candidate to the position.  Furthermore, in accordance with this policy, Mahoney testified that he recommended Duell for the position based on Duell's experience with staffing decisions, his superior performance on the oral interview, his superior response to the staffing problem, and Mahoney's own familiarity with Duell's excellent work in the past.  If a candidate's place on the Qualification Statement automatically entitled him or her to the job, there would be no need to conduct an oral interview, or individually assess a candidate's experience and qualifications, which is simply not how the two-step hiring process works.

The mere fact Herrera was not given the promotion is not enough to prove it was done in retaliation for the filing of his initial complaint without more "specific" and "substantial" evidence to shore up the sparse circumstantial evidence that is presented.   To avoid summary judgment, Herrera "must do more than establish a *prima facie* case and deny the credibility of Defendant's witnesses." *Wallace*, 26 F.3d at 890.  In *Stegall,* the Court was presented with specific and substantial evidence that came directly from testimony and indirectly from conduct by Marathon's employees.  Here, Herrera has not presented evidence of tell-tale conduct or testimony that would constitute an admission against interest or would otherwise be indicative of a non-legitimate reason for denying Herrera the promotion.  Herrera's carefully imagined version of what could have transpired, based only upon his contention that Miller was a member of the interview panel, his score of 100 on his qualification examination, and vague allusions to the realities of human nature, does not constitute the specific and substantial evidence necessary to

create a triable issue of fact as to whether Duell's promotion over him was in retaliation for the filing of his EEOC complaint.

Even with the low threshold of evidence that is required, Herrera has not met his burden. In fact, he has not even addressed the issue of Duell's excellent qualifications. Accordingly, the Court will grant Defendant's summary judgment motion.

### ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that**:

1) Defendant's Second Motion for Summary Judgment (Docket No. 58), filed on August 1, 2005, is GRANTED.

2) Defendant's Motion to Strike Affidavit of Jamie [sic] Herrera in Response to Second Motion for Summary Judgment (Docket No. 62), filed on September 9, 2005, is GRANTED.

DATED: September 26, 2005

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order – Page 16**